**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY CAULTON,** | ) | **Case No. 4:13CV1909** |
| | ) | |
| **Petitioner,** | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| **v.** | ) | **Magistrate Judge George J. Limbert** |
| | ) | |
| **CHRISTOPHER LAROSE, Warden,** | ) | |
| **TRUMBULL CORRECTIONAL** | ) | **REPORT AND RECOMMENDATION** |
| **INSTITUTION,** | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| **Respondent.** | ) | |

Petitioner Anthony Caulton ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his Mahoning County, Ohio Court of Common Pleas conviction for murder with a firearm specification. *Id.* On January 14, 2014, Respondent Christopher LaRose, Warden of the Trumbull Correctional Institution in Leavittsburg, Ohio ("Respondent") filed an answer/return of writ. ECF Dkt. #7. On April 16, 2014, Petitioner filed a traverse. ECF Dkt. #11.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

I.  **SYNOPSIS OF THE FACTS**

The Seventh District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #7-18-7 at 15-35. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6ᵗʰ Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> On August 19, 2006, Larry Jones went to watch his nephew's pee wee football game at the South Field House in Youngstown. Denise Leonard, who was familiar with Jones from the neighborhood, was at the game with friends and briefly exchanged greetings with Jones while there. Later in the game she saw Jones "tussling" with Caulton on a landing to the bleachers. Leonard was familiar with Caulton, whom she knew as "Tone." She was not really paying much

attention to the two men, until she heard someone saying "he got a gun." She then saw a gun in Caulton's hand. She did not see Jones with a gun, but rather saw him run away from Caulton. Leonard was very close to where the shots were fired, but did not see the actual shooting occur. Leonard later identified Caulton in a photo array as the man who had the gun in his hand. Leonard was a reluctant witness, she did not come forward to police on her own, instead detectives surprised her with an interview while she was at felony dependency court on August 24, apparently because she told her caseworker she was at the game.

Danielle Howard, a good friend of Jones' sister, was also at the game. She went to approach Jones to talk to him, but then saw a man walk up to Jones. She saw Jones throw up his hands in what appeared to be an invitation to fight. The other man pulled out a gun and chased Jones past her. Jones ran up the bleachers and after tussling with the other man for a moment, went over the railing and onto the field. Howard heard 1 gunshot, then 3 to 4 seconds later she heard 4 or 5 more. She did not see the actual shooting occur; as soon as she heard the first shot she grabbed the children she was with and started running. She did not talk to the police at the scene since her focus was on the safety of her children. She called Jones' sister to notify her about the shooting. On cross, Howard conceded that during a later interview with police she was shown a photo array and believed the shooter was another person in the array, not Caulton.

Christopher Thomas witnessed the actual shooting from a close, unobstructed distance. He first saw the victim running towards him, being chased by another man. He heard someone shout, "he has a gun," and then saw the two men scuffling. When the victim attempted to go over the railing to escape, the shooter took his first shot. Thomas explained: "He shot him. He fell to the ground. He shot him again. The shooter then turned his back towards me like he was getting ready to go, like he took a few steps like he was getting ready to leave, and then came back and finished him off, firing several more shots into the victim as he lay on the football field."

ECF Dkt. #7-1 at 18-20.

## II.  **PROCEDURAL HISTORY**

### A.  **State Trial Court**

On November 2, 2006, the Mahoning County, Ohio Grand Jury indicted Petitioner on one count of murder in violation of Ohio Revised Code ("ORC") § 2903.02(A)(D) with a firearm specification, one count of having weapons while under disability in violation of ORC § 2923.13(A)(3)(B), one count of illegal conveyance or possession of deadly weapon or dangerous ordnance into school safety zone in violation of ORC § 2923.22(B)(D), and one count of inducing panic in violation of ORC § 2917.31(A)(3)(C)(4)(a).  ECF Dkt. #7-1 at 36-37.

On March 27, 2007, Petitioner, through counsel, filed a motion to suppress statements that he had made to police officers and any evidence or testimony resulting from the alleged unconstitutional interrogation of him on October 31, 2006.  ECF Dkt. #7-1 at 190.  He also

moved to suppress the pretrial identifications made through a photo array, asserting that they were unduly suggestive and unreliable because the photo array was done after extensive media coverage and after his name and photo were released to the media . *Id*. The State of Ohio filed a response. ECF Dkt. #7-1 at 206-215.

On October 4, 2007, Petitioner, through counsel, also filed a motion to dismiss his case based upon a violation of his speedy trial rights. ECF Dkt. #7-1 at 216.

The trial court held a hearing on both of Petitioner's motions and overruled them on January 25, 2008. ECF Dkt. #7-1 at 225. The court did sustain Petitioner's motion to suppress his statement given to the police officers. *Id*. at 227.

On February 11, 2008, Petitioner executed a waiver of speedy trial form, indicating that he was waiving his right to a speedy trial, but he was not waiving any speedy trial issues or alleged violations prior to the date that he signed the waiver. ECF Dkt. #7-1 at 228.

On April 8, 2008, Petitioner, through counsel, filed another motion to dismiss the indictment based upon a violation of his speedy trial rights. ECF Dkt. #7-1 at 230. The State of Ohio filed a response to the motion. ECF Dkt. #7-1 at 241. He also filed another motion to dismiss his case, asserting that the prosecutor reviewed, copied and retained parts of defense counsel's file without reason and the materials were not subject to disclosure and were attorney work product. ECF Dkt. #7-1 at 334. The State of Ohio filed a motion to strike this latter motion, asserting that Petitioner's right to counsel was not violated because the alleged work product was disclosed to other unrelated parties and therefore waived any work product assertion. *Id.* at 359-360. On November 20, 2008, the trial court overruled the State's motion to strike. *Id.* at 372.

Petitioner also filed a motion for change of venue, asserting that the media coverage of the case had tainted the jury pool. ECF Dkt. #7-1 at 266. The State of Ohio filed a response. ECF Dkt. #7-1 at 315.

On December 1, 2008, the trial court held a hearing on Petitioner's motion to dismiss and found no violation of Petitioner's Sixth Amendment rights. ECF Dkt. #7-1 at 380. The court therefore overruled Petitioner's motion to dismiss the indictment. *Id*.

On August 4, 2009, the trial court issued a judgment entry indicating that the jury trial began on July 27, 2009 and concluded on August 3, 2009 when the jury returned a guilty verdict of murder with a firearm specification.  ECF Dkt. #7-1 at 6.  The trial court held a sentencing hearing and sentenced Petitioner to a term of imprisonment of fifteen years to life for the murder conviction and a three-year mandatory term of imprisonment for the firearm specification.  *Id.* at 7-8.

On August 7, 2009, the trial court issued a corrected judgment entry, indicating that upon the motion of Petitioner, the trial court severed the weapons under disability charge and the State of Ohio dismissed the deadly weapon in a school zone and inducing panic charges from the trial, thereby leaving only the murder with the firearm specification charges to go forward at trial.  ECF Dkt, #7-1 at 9.  The trial court also cited to the various trial motions, including the motions in limine and motion to suppress and its rulings on said motions.  *Id*. at 10-13.  The trial court further reviewed its interrogation of the jurors concerning pretrial publicity of the instant case and noted that it had overruled Petitioner's motion for change of venue on that basis.  *Id*. at 11-12.  The trial court also explained that Petitioner filed a Rule 29 motion for dismissal of the murder charge but the trial court overruled said motion.  *Id.* The trial court indicated that the jury returned a guilty verdict on the murder charge and on the firearm specification.  *Id.* at 12.

### B.  **Direct Appeal**

On August 20, 2009, Petitioner, through counsel, filed a timely notice of appeal to the Ohio Court of Appeals for the Seventh District.  ECF Dkt. #7-1 at 54.  In his appellate brief, Petitioner asserted the following assignments of error:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND VIOLATED HIS STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL BY DENYING HIS MOTIONS TO DISMISS DUE TO EXPIRATION OF SPEEDY TRIAL FOR APPELLEE'S FAILURE TO BRING APPELLANT TO TRIAL WITHIN THE PERIOD SPECIFIED IN R.C. 2945.71.
>
> THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND VIOLATED HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH[sic] AMENDMENT WHEN THE TRIAL COURT REFUSED TO CONDUCT A NEW SUPPRESSION HEARING BEFORE RULING ON APPELLANT'S MOTION USING WITNESS TESTIMONY FROM A PREVIOUS HEARING.

-4-

> THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT HIS CONVICTION FOR MURDER WITH A FIREARM SPECIFICATION WERE[sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.
>
> THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO GIVE PROPER INSTRUCTIONS TO THE JURY REGARDING THE LESSER INCLUDED INSTRUCTION FOR VOLUNTARY MANSLAUGHTER WHEN THE EVIDENTIARY TESTIMONY ADDUCED AT TRIAL WARRANTED SAID INSTRUCTION.

ECF Dkt. #7-1 at 59-91.  The State filed an appellate brief.  ECF Dkt. #7-1 at 96.

On December 16, 2011, the Seventh District Court of Appeals issued an opinion affirming the trial court's judgment.  ECF Dkt. #7-1 at 14-35.

**C**.  **Supreme Court of Ohio**

On January 30, 2012, Petitioner, through new counsel, filed a notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #7-1 at 137.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> THE TRIAL COURT AND THE SEVENTH DISTRICT COURT OF APPEALS ERRED TO THE PREJUDICE OF APPELLANT AND VIOLATED HIS STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL BY DENYING HIS MOTIONS TO DISMISS DUE TO EXPIRATION OF SPEEDY TRIAL FOR APPELLEE'S FAILURE TO BRING TO TRIAL WITHIN THE PERIOD SPECIFIED IN R.C. 2945.71.
>
> THE TRIAL COURT AND THE SEVENTH DISTRICT COURT OF APPEALS ERRED TO THE PREJUDICE OF APPEALLANT[sic] AND VIOLATED HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT BY REFUSING TO CONDUCT A NEW SUPPRESSION HEARING BEFORE RULING ON APPELLANT'S MOTION USING WITNESS TESTIMONY FROM A PREVIOUS HEARING.
>
> APPELLANT'S CONVICTION FOR MUDER[sic] WITH A FIREARM SPECIFIATION[sic] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.
>
> THE TRIAL COURT AND THE SEVENTH DISTRICT COURT OF APPEALS ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO GIVE PROPER INSTUCTONS[sic] TO THE JURY REGARDING THE LESSER INCLUDED INSTRUCTION FOR VOLUNTARY MANSLAUGHTER WHEN THE EVIDENTIARY TESTIMONY ADDUCED AT TRIAL WARRANTED SAID INSTRUCTION.

ECF Dkt. #7-1 at 140-141.

-5-

On April 4, 2012, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed Petitioner's appeal as not involving any substantial constitutional question. ECF Dkt. #7-1 at 176.

**D.**     **Motion to Assess Jurisdiction**

On June 29, 2012, Petitioner filed a pro se "motion to assess jurisdiction and for compliance with Crim. R. 32(C)." ECF Dkt. #7-1 at 178. On July 27, 2012, the trial court denied Petitioner's motions, finding that his claims were barred by the doctrine of res judicata and indicating that he was commissioned by the Chief Justice of the Ohio Supreme Court under Article IV, Section 6 of the Ohio Constitution. ECF Dkt. #7-1 at 177.

Petitioner appealed the trial court's ruling to the Seventh District Court of Appeals. ECF Dkt. #7-1 at 178. The appellate court found no merit to Petitioner's claims that the visiting trial judge who presided over his jury trial was never properly assigned to his case and therefore lacked jurisdiction, the judgment entry of sentence was not a final appealable order because it failed to comply with Rule 32(C) of the Ohio Rules of Criminal Procedure, and the trial court lacked jurisdiction because the indictment was not properly filed. *Id.* at 178-183.

**III.**     **28 U.S.C. § 2254 PETITION**

On August 29, 2013, Petitioner filed the instant petition for a writ of federal habeas corpus. ECF Dkt. #1. Petitioner raises the following ground for relief:

> GROUND ONE:
>
> THE TRIAL COURT CAUSE[sic] PREJUDICIAL HARM TO PETITIONER BY VIOLATING HIS STATUTORY, AND CONSTITUTIONAL RIGHT TO SPEEDY TRIAL.
>
> Supporting Facts:
>
> THE TRIAL COURT DENIED MOTION TO DISMISS, EVEN WHILE SPEEDY TRIAL CLOCK HAD EXPIRED, AND COURT HAD FAILED TO BRING PETITIONER TO TRIAL WITHIN PERIOD SPECIFIED BY STATUTE.
>
> GROUND TWO:
>
> PETITIONER SUFFERED PREJUDICE, AND RIGHTS TO DUE PROCESS WERE VIOLATED UNDER FIFTH, FOURTEENTH AMENDMENTS U.S. CONST., WHEN TRIAL COURT REFUSED TO HOLD A NEW SUPPRESSION HEARING.

Supporting Facts:

NEW TRIAL JUDGE SUDDENLY APPEARED, DENIED MOTION TO SUPPRESS, BUT THIS JUDGE USED PRIOR WITNESS TESTIMONY FROM A PREVIOUS HEARING, WHICH THIS NEW JUDGE DID NOT ATTEND,  THEREFORE THIS JUDGE HAD NO PERSONAL KNOWLEDGE OR WHAT TOOK PLACE AT THE HEARING, AND DID NOT EVEN CERTIFY THAT HE HAD FAMILIARIZED HIMSELF WITH THE RECORD BEFORE RULING ON THE MOTION.

GROUND THREE:

PETITIONER WAS DENIED DUE PROCESS DUE TO THE FACT THAT THE CONVICTION FOR MURDER R.C. 2903.02, W/FIREARM SPECIFICATION 2941.145, WAS BASED ON INSUFFICIENT EVIDENCE.

Supporting Facts:

CONVICTION IS BASED OF INSUFFICIENT EVIDENCE WHERE JURY VERDICT WAS INCONSISTENT WITH EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.  THERE WAS NO CLEAR EVIDENCE BEYOND A REASONABLE DOUBT PETITIONER COMMITTED THE CRIME OF MURDER, AND THE EVIDENCE THAT WAS PRESENTED POINTS MORE TOWARDS MANSLAUGHTER WHERE WITNESS SAID ARGUMENT AND FIGHT TOOK PLACE WHERE VICTIM WAS AGGRESSOR.

GROUND FOUR:

TRIAL COURT CAUSE[sic] PREJUDICE TO PETITIONER, VIOLATED SIXTH AMENDMENT RIGHT TO FAIR TRIAL, FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS BY FAILING TO GIVE PROPER INSTRUCTIONS TO JURY.

Supporting Facts:

JURY INSTRUCTIONS FOR THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER WAS WARRANTED WHEN EVIDENCE BASED ON EVIDENTIARY TESTIMONY THAT WAS GIVEN AT TRIAL SHOWS THAT THERE WAS A HEATED ARGUMENT, FIGHT, AND THAT VICTIM WAS THE AGGRESSOR.

*Id.* On January 14, 2014, Respondent filed an answer/return of writ.  ECF Dkt. #7.  On

April 16, 2014, Petitioner filed a traverse.  ECF Dkt. #11.

## IV.    **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the

merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v.*

*United States*, "Procedural barriers, such as statutes of limitations and rules concerning

procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

    **A.**     <u>**Statute of Limitations**</u>

    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

    **B.**     <u>**Exhaustion of State Remedies**</u>

    As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr*

-8-

*v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). Respondent concedes that all grounds for relief have been properly exhausted.

### C.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.  Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Respondent does not raise any issues concerning procedural default.

### V.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert.*

*denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

-10-

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.   Decisions of lower federal courts may not be considered.
>
> B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.   The state court decision may be overturned only if:
>
>> 1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E.   Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

-11-

Finally, a reviewing federal court is bound by the presumption of correctness set forth in

28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to

mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert.*

*denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically

deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."

*McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).

Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state

appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension*

*Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.    LAW AND ANALYSIS

### A.    Speedy Trial

#### 1.    Noncognizability

Respondent first asserts that to the extent that Petitioner argues in his first ground for

relief that he was not brought to trial within the requirements of ORC § 2945.71, this assertion is

not cognizable in federal habeas corpus because it is an issue of state law.  ECF Dkt. #7 at 11-12.

Respondent further asserts that to the extent that Petitioner asserts this ground for relief as a

federal constitutional issue, a review of the procedural history of the state case and applicable

federal law establishes that the majority of the delays in bringing Petitioner's case to trial were

attributable to Petitioner and any non-attributable delay in bringing Petitioner to trial was not

unduly prejudicial.  *Id*. at 12-18.

The undersigned recommends that the Court find that Respondent is correct that to the

extent that Petitioner asserts that the delay in bringing him to trial violated Ohio Revised Code

-12-

§2945.71 is not cognizable in federal habeas corpus because federal habeas corpus relief does not lie for errors of state law.  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)("[F]ederal habeas corpus relief does not lie for errors of state law.").

### 2.    Federal Constitutional Speedy Trial Rights

However, Petitioner also asserts that the delay in bringing him to trial violated his federal constitutional rights.  ECF Dkt. #1 at 5.  The Sixth Amendment to the United States Constitution guarantees the accused a speedy trial in all criminal prosecutions. The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Supreme Court has held that the states "are free to prescribe a reasonable period consistent with constitutional standards."  *Id.* at 523.

The *Barker* Court set out four criteria by which an alleged violation of the constitutional right to a speedy trial is to be judged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  *Barker*, 407 U.S. at 530; *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir.), *cert. denied* 514 U.S. 935 (1998).  None of the four factors is either necessary or sufficient to finding a deprivation of the right to a speedy trial, but must be balanced with other relevant circumstances. *Id.* at 533.  Prejudice, the most important of the considerations, is assessed in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.  *Id.* at 532.  In a subsequent decision, *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the balance was described as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  *Id.* at 651.

The Ohio appellate court in this case cited to Ohio law and federal law and undertook the four-pronged analysis set forth in *Barker*.  ECF Dkt. #7-1 at 22-25. The court first noted that

-13-

Petitioner conceded that the State had 270 days in which to bring him to trial because he was being held in custody on two unrelated charges.  *Id*. at 23, citing ORC 2945.71(C)(2) and *State v. Sanchez*, 110 Ohio St.3d 274, 853 N.E.2d 283, 2006-Ohio-4478 (2006)(triple count provision of ORC 2945.71(C)(2) is inapplicable when a defendant is held in custody on other charges).  The appellate court also noted that the issue before it was whether Petitioner's speedy trial clock expired before he executed the waiver of speedy trial rights form on February 11, 2008 as he waived any right to assert speedy trial violations after that date.  ECF Dkt. #7-1 at 23, 228.  The court therefore found that the relevant dates for calculating the running of the speedy trial time clock were October 31, 2006, when Petitioner was taken into custody in Mahoning County, and February 11, 2008 when the speedy trial waiver was journalized.  *Id*. at 23-24.  The court outlined the numerous tolling events and attributed those events to each side depending upon the nature of the motion and the party requesting the delay.  *Id*. at 22-25.  The appellate court held that, at most, only 219 days had elapsed at the time that Petitioner executed his speedy trial waiver and therefore there was no merit to his speedy trial violation claim.  *Id.* at 27.

In *Barker*, the Supreme Court noted that the first factor in its four-factor analysis is "a triggering mechanism," instructing that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530;  *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir.2005); *Norris*, 146 F.3d at 326.  Thus, the first inquiry is "whether there was a presumptively prejudicial delay" to warrant further investigation of the *Barker* factors. *Norris*, 146 F.3d at 326–327.  The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier.  *Maples*, 427 F.3d at 1026.  Courts have found that a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Doggett* at 652, n. 1.

A review of the trial court docket in this case leads the undersigned to conclude that the Ohio appellate court's determination that only 219 days elapsed was not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts in this case.

-14-

Petitioner was arrested on October 31, 2006, indicted on November 2, 2006, signed the waiver of speedy trial rights form on February 6, 2008, which was journalized by the court on February 11, 2008, and he was brought to trial on July 27, 2009.  ECF Dkt. #7-1 at 6, 36.  Petitioner asserts that he was held over 1,000 days before his case proceeded to trial.  ECF Dkt. #11 art 8.

While Petitioner's time calculation may be correct, the time period at issue for speedy trial purposes is only from October 31, 2006, the date he came into custody, until February 11, 2008, the date that the trial court journalized Petitioner's February 6, 2008 execution of waiver of his statutory and constitutional speedy trial rights as of that date forward.  This amounts to 468 days, 98 days over the 270-day speedy trial requirement.

However, the Ohio appellate court reviewed the trial court's docket and indicated that the docket showed that numerous continuances were predicated upon Petitioner's discovery issues and motions which tolled the running of the clock.  ECF Dkt. #7-1 at 24-26, 381-415.  The Ohio appellate court first found that from the time that Petitioner was taken into custody on October 31, 2006 until he filed a motion for discovery on January 8, 2007, a period of 69 days ran from the speedy trial clock.  *Id.* This calculation is correct and the trial court docket confirms the discovery motion.  ECF Dkt. #7-1 at 413-414.  The appellate court noted that the parties thereafter disputed whether a discovery request is a tolling event but the court cited to Ohio Supreme Court caselaw and found that a discovery request is indeed a tolling event.  ECF Dkt. #7-1 at 24.  The court therefore held that Petitioner's second motion for discovery tolled the clock from January 8, 2007 until January 31, 2007 when the State provided the requested discovery.  *Id.*  The court further found that even if this motion had not tolled the clock, Petitioner had filed an intervening motion for a bill of particulars on January 8, 2007 to which the State responded on January 10, 2007, which tolled the clock until at least that time.  *Id.* Conservatively then, only 69 days of the speedy trial clock had run from October 31, 2006 through January 10, 2007.

The Ohio appellate court further noted that Petitioner also filed a motion to continue trial on January 10, 2007, which tolled the speedy trial clock under state law, and the court continued

the trial date until February 28, 2007.  ECF Dkt. #7-1 at 24, 413.  In the interim, the court noted that Petitioner had filed three other motions on February 20, 2007, a motion for relief from prejudicial joinder, a motion for ex parte order authorizing an investigator, and a motion to continue trial, which further tolled the clock.  *Id*.  The trial court ruled on these motions on February 27, 2007 and rescheduled the trial until April 25, 2007.  *Id*.  Thus, no additional days were added to the speedy trial clock from January 10, 2007 to April 25, 2007.

Upon further review of the trial court docket, the Ohio appellate court found that Petitioner filed a motion to suppress and request for hearing on March 27, 2007.  ECF Dkt. #7-1 at 24, 190.  The trial court held a hearing on the motion on May 23, 2007, although the hearing date does not appear on the docket.  However, Petitioner indicated in his motion to suppress that Judge Cronin held a hearing on his motion on May 23, 2007.  ECF Dkt. #7-1 at 220.  The Ohio appellate court also noted the hearing date of May 23, 2007.  *Id*. at 25.  Thus, again, no time from the speedy trial clock ran through May 23, 2007.

The Ohio appellate court also noted that on October 4, 2007, after the hearing on the motion to suppress but before it was ruled upon, Petitioner filed a motion to dismiss his case on speedy trial grounds.  ECF Dkt. #7-1 at 216.  He asserted a violation of his speedy trial rights based upon the trial court's failure to timely rule on his motion to suppress.  *Id.* at 220.  The appellate court found that even presuming that the trial court was unreasonable in failing to rule on the motion to suppress from the hearing date of May 23, 2007 until the date of the October 4, 2007 motion and it was not tolled, 133 days had run off of the speedy trial time clock.  Adding this 133 days to the 69 days totals 202 days.  While the trial court did not rule on Petitioner's motion to suppress until January 25, 2008, when it addressed one of the issues, and January 30, 2008 when it addressed the rest of the motion, Petitioner's motion to dismiss tolled the clock until the trial court ruled on that motion and the motion to suppress on January 25, 2008.  ECF Dkt. #7-1 at 27.  The Ohio appellate court found that from January 25, 2008 until February 11, 2008, when the trial court journalized  Petitioner's waiver of speedy trial rights, added another 17 days  to the speedy trial time clock.  *Id*.  Thus, adding the 202 days to the 17 days, the Ohio

-16-

appellate court reasoned that only 219 days ran on the speedy trial clock.

Upon review of the applicable law, the trial court's docket and the Ohio appellate court opinion, the undersigned recommends that the Court find that the Ohio appellate court's determination that Petitioner's speedy trial rights were not violated by trial court delays is not contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts in the instant case.

The Ohio appellate court also concluded in its opinion that even if Petitioner was held in custody beyond the 270-day requirement, a review of the reasons for the various delays occurring before he signed the speedy trial waiver weighed against a finding of a speedy trial violation. The court cited to the numerous filings by Petitioner that were  attributable to him and tolled the speedy trial clock.  Between October 31, 2006 and February 11, 2008, Petitioner filed a number of motions, including two motions to continue his trial, two motions for discovery, a motion for a bill of particulars, a motion for relief from prejudicial joinder in which he requested a hearing, a motion to suppress, a motion to dismiss, and a motion for a new evidentiary hearing after the trial court held a hearing on his motion to suppress.  ECF Dkt. #7-1 at 407-415.  The trial court held hearings and pretrials on February 27, 2007, October 15, 2007 and January 25, 2008.  *Id.*

The Ohio appellate court also separately addressed Petitioner's main assertion that the trial court's delay in ruling on his motion to suppress and motion to dismiss was unreasonable. The court cited Ohio caselaw confirming that a trial court must rule on defense motions as expeditiously as possible.  ECF Dkt. #7-1 at 25 (citations omitted).  The court then reviewed the *Barker* factors in determining the reasonableness of the time taken by the trial court in ruling on Petitioner's motions.  *Id.* at 26.  The court correctly found that the delay in ruling on Petitioner's motions could not be attributable to Petitioner because the original trial judge suddenly retired without ruling on the motion, a judge subsequently assigned the case had to recuse himself, and Petitioner's case was then transferred to two other judges.  *Id.*  The court found that the 304-day delay between Petitioner's filing of the motion to suppress and a ruling on that motion was not unreasonable since the issues presented by Petitioner in that motion were moderately complex

-17-

and Petitioner had filed the intervening motion to dismiss after the hearing on the suppression motion, asserting that the indictment should be dismissed because his motion to dismiss was not timely ruled upon and his speedy trial rights were violated. *Id.* at 26. The Ohio appellate court found that this motion to dismiss was an interim tolling event for speedy trial purposes because Petitioner filed it on October 4, 2007 and requested a new evidentiary hearing on his motion to suppress and the trial court held a hearing on all of those motions on January 24, 2008. *Id.* The trial court overruled Petitioner's motion to dismiss from the bench on that date and issued a partial ruling on Petitioner's motion to suppress from the bench as well. ECF Dkt. #7-1 at 407-408. The trial court thereafter issued judgment entries on the motions on January 30, 2008. *Id.* The Ohio appellate court found that the trial court handled the motion to dismiss as expeditiously as possible considering the circumstances and found that the delay in ruling was therefore reasonable. *Id.*

The undersigned agrees that while the time lag between the original trial judge's hearing on the motion to suppress and a final ruling on that motion was lengthy and could not be attributable to Petitioner, the facts that the original judge retired, another judge had to recuse herself and Petitioner filed intervening motions, including one requesting a new hearing on the motion to suppress, leads the undersigned to recommend that the Court find that the Ohio appellate court's determinations were not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented in state court.

### B. Trial Court Refusal to Conduct New Suppression Hearing

In his second ground for relief, Petitioner asserts that the trial court erred when it refused to conduct a new suppression hearing on January 24, 2008. ECF Dkt. #1 at 6-7. Petitioner asserts that the new judge assigned to his case was not the judge who presided over the original suppression hearing and he therefore lacked personal knowledge over what occurred at that hearing and failed to certify that he familiarized himself with the record before ruling on the motion to suppress. *Id.*

The undersigned notes that on March 27, 2007, Petitioner, through counsel, filed a motion to suppress evidence in the trial court.  ECF Dkt. #7-1 at 190.  In his motion, Petitioner moved to suppress his statement given to police officers on October 31, 2006 and any subsequent evidence obtained as a result thereof due to an unconstitutional interrogation in violation of *Miranda*.  *Id.* at 190.  Petitioner also moved to suppress pretrial identifications made through a photo array, alleging that the identification procedures were illegal and the photo array was presented to witnesses only after extensive pretrial publicity.  *Id.* at 204-205.

Judge Cronin was the judge assigned to Petitioner's case and she presided over the May 27, 2007 hearing on the motion to suppress.  ECF Dkt. #7-1 at 412-414; ECF Dkt. #11 at 14.  However, she retired and Petitioner's case was transferred to another judge, who recused herself, and then his case was transferred to two other judges.  *Id*. at 17-18, 410. Judge Durkin held a hearing on Petitioner's motion to dismiss and motion to suppress on January 24, 2008 and issued a judgment entry overruling the motion on January 25, 2008 and overruling the motion to suppress on the issue of the photo array.  *Id.* at 408. He took the other issue presented in the motion under advisement.  *Id.*  On January 30, 2008, Judge Durkin issued a judgment entry reiterating his previous overruling of Petitioner's motion to suppress the identification of Petitioner from a photo array, finding that the array was not unduly suggestive or unreliable.  *Id.* at 407.  However, Judge Durkin granted Petitioner's motion to suppress the statements that he gave to officers on October 31, 2006 because the transcript and video statement showed that officers clearly did not cease their questioning of Petitioner after he unequivocally stated at least six times that he "had nothing else to say." *Id*. at 407-408.

Due process protects criminal defendants against the introduction of evidence at trial that results from an unreliable identification obtained through unnecessarily suggestive procedures.  *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).  If the pretrial identification used is unduly suggestive, it does not necessarily lead to suppression of the resulting identification.  *Perry v. New Hampshire*, – U.S. –, 132 S.Ct. 716, 724, 181 L.Ed.2d 694 (2012).  Rather, the Court must then determine "whether under the totality of the circumstances

-19-

the identification was reliable even though the confrontation procedure was suggestive." *Neil*, 409 U.S. at 199.  The factors to consider in determining the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200.

The Ohio appellate court addressed the issue of the trial court's failure to conduct a new suppression hearing before ruling on the motion.  ECF Dkt. #7-1 at 27.  That court found that the trial court's suppression of Petitioner's statement due to an alleged *Miranda* violation was not at issue since the trial court granted the motion to suppress on that issue.  *Id*. As to whether the trial court erred by not allowing a new hearing on the motion to suppress the photo array, the Ohio appellate court ruled that the trial court did not err because Petitioner did not present evidence that the procedures used by the police officers were impermissibly suggestive, but rather, argued only that the identifications were unreliable due to pretrial publicity.  *Id*. at 28-29.  The court found that this alone would not have mandated suppression of the identifications, but would have affected the weight of each witnesses' testimony at trial that could be examined and cross-examined vigorously at trial.  *Id*.  The Ohio appellate court surmised that the trial court therefore would have denied the motion to suppression and allowed the identifications at trial even if the suppression witnesses were lacking in all credibility and had in fact viewed extensive media coverage of the proceedings as it was an issue of credibility for the jury to decide. *Id*. at 29.

The undersigned recommends that the Court find that the Ohio appellate court's decision was not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented in the state court.  As the Ohio appellate court pointed out, Petitioner did not assert that the police caused any undue suggestiveness as required for a due process violation, but rather, he focused his argument on the fact that the photo array presentations and identifications occurred after extensive pretrial publicity.  ECF Dkt. #7-1 at 29.  Even if Petitioner had presented such an assertion, the Sixth

-20-

Circuit Court of Appeals, relying on *Perry*, explicitly held that "an eyewitness's reading about a defendant in the press or having preconceived notions about a defendant's criminal background– do not make an identification procedure unduly suggestive." *Howard v. Warden, Lebanon Correctl. Inst.*, 519 Fed. App'x 360, at 369, citing *Perry,* 132 S.Ct. at 726.   The *Perry* Court had reasoned:

> Perry maintains that the Court can limit the due process check he proposes to identifications made under "suggestive circumstances." Tr. of Oral Arg. 11-14. Even if we could rationally distinguish between suggestiveness from other factors bearing on the reliability of eyewitness evidence, Perry's limitation would involve trial courts, routinely, in preliminary examinations. Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do. Out-of-court identifications volunteered by witnesses are also likely to involve suggestive circumstances. For example, suppose a witness identifies the defendant to police officers after seeing a photograph of the defendant in the press captioned "theft suspect," or hearing a radio report implicating the defendant in the crime. Or suppose the witness knew that the defendant ran with the wrong crowd and saw him on the day and in the vicinity of the crime. Any of these  circumstances might have "suggested" to the witness that the defendant was the person the witness observed committing the crime.

> \*       \*       \*

> The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness.

> Our unwillingness to enlarge the domain of due process and Perry and the dissent urge, rests, in large part, on our recognition that the jury, not the judge, traditionally determines the reliability of evidence.

*Id.* at 727-728.  Accordingly, the undersigned recommends that the Court find no merit to Petitioner's due process assertion.

>   **C.    Sufficiency of the Evidence**

Petitioner asserts in his third ground for relief that sufficient evidence does not support his murder conviction.  ECF Dkt. #1 at 8.  The undersigned recommends that the Court find that the Ohio appellate court's determination that sufficient evidence existed to support the murder conviction is not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented at the

-21-

state court proceeding.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson.  See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends. *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v.*

-22-

*Engle,* 703 F.2d 959, 969 (6th Cir. 1983).

The Ohio appellate court in this case cited exclusively to Ohio caselaw and concentrated primarily upon Petitioner's argument that his conviction was against the manifest weight of the evidence, which he combined with a sufficiency of the evidence argument.  ECF Dkt. #7-1 at 29-30.  However, the cases cited by the Ohio appellate court, *including State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52 (1997), and *State v. Hurst*, 181 Ohio App.3d 454, 2009-Ohio-983 (2009), both cited to *Jackson* and the standard of review for a sufficiency of the evidence analysis.  The Ohio appellate court also concluded its determination on this issue by stating that the jury did not lose its way as to create a manifest miscarriage of justice and the weight of the evidence supported the conviction, demonstrating that both a manifest weight of the evidence and a sufficiency of the evidence analysis occurred.  ECF Dkt. #7-1 at 32.

The Ohio appellate court set forth the requirements for a murder conviction under section 2903.02(A) of the Ohio Revised Code, applied the *Jackson* standard, reviewed the testimony of eyewitnesses Denise Leonard and Christopher Thomas and concluded that the state met its burden of proving the crime of murder beyond a reasonable doubt.  ECF Dkt. #7-1 at 30-32.  As set forth by the Ohio appellate court, Ohio Revised Code section 2903.02(A) provides in relevant part that "[n]o person shall purposely cause the death of another..." ORC § 2903.02(A).

Petitioner contends that the jury verdict was inconsistent with the evidence and the testimony presented at trial and no clear evidence was presented beyond a reasonable doubt to establish that Petitioner committed the crime of murder.  ECF Dkt. #1 at 8.  However, the Ohio appellate court cited to the testimony of Diane Leonard, a somewhat reluctant witness, who testified at trial that she was familiar with Petitioner and the victim before the shooting, she heard a person say that someone had a gun, she looked over and saw Petitioner and the victim "tussling" or fighting, and she saw a gun in Petitioner's hand before she heard gunshots, although she did not see the shooting or who got shot.  ECF Dkt. #6-4 at 40-49.  She identified Petitioner as the person who had the gun that day.  *Id.* at 44.  The prosecutor presented Ms. Leonard with a photo array dated August 24, 2006 that Ms. Leonard had signed in which she had identified

-23-

Petitioner.  *Id*. at 49-50.

The Ohio appellate court also referred to the testimony of Christopher Thomas, who testified that he was at the South Field House watching his grandsons play in the football game. ECF Dkt. #6-4 at 74. Mr. Thomas testified that he and his daughter were standing against the railing of the bleachers when he saw a person running toward them and then he heard someone say "gun." *Id*. at 75-76.  He indicated that he then started looking to see where the gun was and by the time he saw where the gun was,

> everything was on top of me.  The victim was running towards me.  He started to go up the into the bleachers.  He then turned around and come down, where he was scuffling with the person who was chasing him.  Then when he went to make an attempt to go over the railing, got one leg over the railing, took the first shot. He fell to the field.  The shooter - - the person who shot him, after the shot, he attempted to walk away, then turned and come back and shot him some more.

*Id*. at 76-77.  Mr. Thomas stated that he did not know Petitioner or the victim and he elaborated that as the victim was running toward him, the shooter was following behind him, chasing him, and he saw the gun in the shooter's hand. *Id*. at 77.  He further testified that the victim came back down the bleachers and tried to scuffle with the shooter, they scuffled, and "[t]hen they stopped, and he went to make an attempt to hit the field." *Id*. at 79.  Mr. Thomas testified that at no time did he see the victim with a gun and he never saw the victim take possession of the gun. *Id*. at 79-80.  He testified that he had a clear line of sight and he identified what the shooter was wearing.  *Id.* at 81-82.  He identified and answered questions concerning a diagram that he drew as soon as he returned home from the incident as to where people were positioned and he wrote down a description of the shooter when the shooting occurred.  *Id*. at 83-84.  He identified Petitioner at trial as the shooter.  *Id.* at 82.  He indicated that he drew the diagram because he wanted to remember everything that he saw.  *Id.* at 92.  He also related the following sequence of events: Petitioner shot the victim, the victim fell to the ground, Petitioner shot the victim again, "[t]he shooter then turned his back towards me like he was getting ready to go, like he took a few steps like he was getting ready to leave and then came back and finished him off." *Id*. at 87.  He affirmed that he was shown a photo array by police a few days after the incident and  he picked

Petitioner out of the array and signed the back of the array on August 25, 2006.  *Id*. at 91-92. When asked if he saw any news stories on the incident or if he heard Petitioner's name on television, Mr. Thomas testified, "No.  With all due respect, sir, I didn't have to see all that, because I seen him."  *Id*. at 92.

Based upon the testimony presented at trial, and considering the evidence in the light most favorable to the prosecution, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of the murder charge and firearm specification proven beyond a reasonable doubt.

### D.    Jury Instructions

#### 1.    Cognizability

Petitioner's fourth ground for relief alleges that a jury instruction on the lesser included offense of voluntary manslaughter was warranted because the evidence showed that a heated argument occurred between the victim and the aggressor and evidence showed that the victim was actually the aggressor.  ECF Dkt. #1 at 10.  The undersigned recommends that the Court find that Petitioner's ground for relief is not cognizable, does not fall into the narrow category of cases warranting a finding of a fundamental miscarriage of justice and is otherwise without merit.

Generally, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted).

Errors in jury instructions given by a state trial court are generally not cognizable in federal habeas corpus unless they deprive a defendant of a fundamentally fair trial. *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *see also Estelle*, 502 U.S. at 72. The Sixth Circuit Court of Appeals has held that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014), citing *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir.1990) (en banc)).

Thus, the question before this Court is not whether the challenged jury instruction is "allegedly incorrect under state law." *Estelle*, 502 U.S. at 71-72. Rather, it is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Id*. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)) (additional citations omitted). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id*. (quoting *Cupp*, 414 U.S. at 147). Further, the Court must be mindful that the "'category of infractions that violate 'fundamental fairness' [is defined] very narrowly.'" *Hardy v. Beightler*, No. 1:08CV161, 2011 WL 1230156, at *25(N.D. Ohio, Mar. 30, 2011), unpublished, quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71–72.

In the instant case, Petitioner cited solely to Ohio law in presenting his claim that the trial court erred by failing to instruct the jury on voluntary manslaughter. ECF Dkt. #7-1 at 88-90. The Ohio appellate court addressed the claim, also solely relying upon Ohio law. *Id.* at 32-34. Thus, unless Petitioner can show that the trial court's failure to instruct the jury on voluntary manslaughter falls into the narrow category of cases warranting the finding of a fundamental miscarriage of justice, this Court should decline to review his ground for relief as noncognizable. The undersigned reviews the fundamental miscarriage of justice issue in conjunction with the

-26-

merits review *infra.*

### 2.   **Merits Review**

The Ohio appellate court correctly noted that although voluntary manslaughter is an inferior degree of murder and not a lesser included offense of murder under Ohio law, the Ohio Supreme Court has held that the test for determining whether a jury instruction on voluntary manslaughter is warranted in a murder case is the same test as when an instruction on a lesser included offense, like involuntary manslaughter, is sought.  *See id.* at 32, quoting *State v. Lewers*, No. 2009-CA- 00289, 2010 WL 4345919, 2010-Ohio-5336 (Ohio App. Ct. Nov. 1, 2010), citing *State v. Shane*, 63 Ohio St.3d 630, 632, 59 N.E.2d 272 (1992).  Therefore, the manslaughter instructions are warranted when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for those crimes.  *State v. Conway*, 108 Ohio St.3d 214, 238, 842 N.E.2d 996 (2006), citing *Shane*, 63 Ohio St.3d at 632.

Ohio Revised Code section 2903.02(A), under which Petitioner was indicted, provides:

> (A)    "No person shall purposely cause the death of another * * *"

ORC § 2903.02(A).  "Purposely," as used above is defined in Ohio Revised Code section 2901.22(A):

> (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

ORC § 2901.22(A).  Section 2903.03(A) of the Ohio Revised Code defines voluntary manslaughter as knowingly causing the death of another

> (A) ...while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person to deadly force...

ORC § 2903.03(A).  The Ohio Supreme Court has held that a defendant's intent to kill need not be proven by direct testimony.  *See State v. Eley*, 77 Ohio St.3d 174, 180 (1996), citing *State v.*

*Lott*, 51 Ohio St.3d 160 (1990).  "Instead, an intent to kill 'may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.'" *Eley*, 77 Ohio St.3d at 180, quoting *State v. Robinson* (1954), 161 Ohio St. 213, paragraph five of the syllabus.

In order to reduce a charge from murder to voluntary manslaughter, "(1) There must have been a reasonable provocation.  (2) The defendant must have been in fact provoked.  (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow.  And (4), the defendant must not in fact have cooled off during that interval." *Shane*, 63 Ohio St.3d at 634, fn.1, quoting 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10.  Provocation "* * *must be reasonably sufficient to incite the defendant to use deadly force." *Shane*, 63 Ohio St.3d at 635.  For a provocation to be reasonably sufficient, "* * *it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.*

Before a trial court may instruct the jury on voluntary manslaughter in a murder case, the court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Conway,* 108 Ohio St.3d at 238-239, quoting *Shane*, 63 Ohio St.3d at paragraph one of syllabus.  In determining whether evidence of reasonably sufficient provocation was presented to warrant a voluntary manslaughter instruction under Ohio law, the trial court applies an objective standard: "[f]or provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane*, 63 Ohio St.3d at 635.  If this prong is met, then the "inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage.  It is only at that point that the '* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *' must be considered." *Id*. at 634, quoting *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph five of the syllabus.

In the instant case, the Ohio appellate court reviewed Ohio law on voluntary manslaughter and the determinations that a trial court must make before instructing the jury on such a charge. ECF Dkt. #7-1 at 33-34. The appellate court held that even though it was not a lesser included offense, Ohio law requires a judge to instruct a jury on voluntary manslaughter when the evidence presented would "reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *Id.* at . #7-1 at 32, quoting *State v. Lewers,* No. 2009-CA-289, 2010 WL 4345919, 2010-Ohio-5336, quoting *Shane*, 63 Ohio St.3d at 635. The court went on to provide that the defendant's burden contains both objective and subjective elements in that objectively, "for provision to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* The Ohio appellate court went on to explain that the subjective part involves determining whether the provocation occasioned by the victim was sufficient in order to provoke the use of deadly force. ECF Dkt. #7-1 at 33. In order to make such a subjective determination, the trial court "must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id.* at 33, quoting *Deem*, 40 Ohio St.3d at 211, quoting *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16, 5 OBR 14 (1982).

The Ohio appellate court also reviewed its own caselaw concerning what constitutes "passage" or "sudden fit of rage" and caselaw dealing with a "cooling off" period. ECF Dkt. #7-1at 34. The court cited to its prior holding in *State v. Kanner*, No. 04MO10, 2006 WL 1851799, 2006-Ohio-3485 (Ohio App. Ct. 7th Dist. June 29, 2006) where it held that "any passion of rage felt by an offender who has had time to cool off does not qualify for 'sudden passion' or 'sudden fit of range' under the current voluntary manslaughter statute. The caselaw dealing with the 'cooling off' period indicates that it is a very short time span." ECF Dkt. #7-1 at 34. The appellate court further quote its prior holding in *State v. Shakoor* that "[i]n the past, we have recognized that the few seconds it takes to reload or readjust one's weapon indicates a sufficient cooling off period: 'the fact that Appellant shot the victim in the head and then stood over the victim and shot him multiple times after that tends to show cool deliberation and not sudden

-29-

passion.'" *Id*. at 34, quoting No. 01CA121, 2003 WL 22231582, 2003-Ohio-5140 (Ohio App. Ct. 7th Dist. Sept. 23, 2003).

The Ohio appellate court thereafter applied the relevant caselaw to the evidence presented at Petitioner's trial.  The court first noted that "the evidence of provocation was scant" in that one witness at trial said she saw the victim "throw up his hands, like let's fight" and other witnesses said some scuffling or "tussling" occurred between Petitioner and the victim before the gunshots.  ECF Dkt. #7-1 at 34.  The court held that such evidence did not meet the level required to warrant an instruction on voluntary manslaughter.  The Ohio appellate court also held that the testimony that Petitioner shot the victim, walked away, and then returned and shot him several more times, demonstrated cool deliberation rather than sudden passion warranting a voluntary manslaughter instruction.  *Id*.

The undersigned recommends that the Court find that the Ohio appellate court reasonably concluded that the voluntary manslaughter jury instruction was not warranted because the evidence of provocation by the victim was not sufficient and no fundamental miscarriage of justice occurred in Petitioner's case.  Ms. Leonard testified that she saw the victim and Petitioner "tussling, fighting."  ECF Dkt. #7-1 at 27-28.  She did not testify that she saw the victim provoke Petitioner.  Mr. Thomas testified that he saw the victim running toward him and his daughter and the victim ran up the bleachers and Petitioner was chasing after the victim. *Id*. at 77-78.  He testified that the victim then turned around to come back down the bleachers and started scuffling with Petitioner.  *Id.* at 77-78.  He testified that when the victim came back down and attempted to go over the railing, Petitioner shot him, the victim fell to the ground, Petitioner shot at him again, then turned his back to Mr. Thomas "like he was getting ready to go, like he took a few steps like he was getting ready to leave and then come back and finished him off."  *Id*. at 77-79, 87.

Ms. Howard testified that while she was trying to speak to the victim at the football game, he seemed focused on another person that was coming toward him.  ECF Dkt. #6-4 at 115.  She indicated that she saw the person coming toward the victim and saw that person and the victim talking a little bit, but she could not hear what they were saying.  *Id*.  She further testified that she

-30-

saw the victim "throw his hands up like, let's fight.  After that I seen the guy pull out a gun and chase Larry[the victim] past me."  *Id*. at 115-116.  Ms. Howard related that she then saw Petitioner chase the victim up into the bleachers and the victim came back down the bleachers and "maybe was tussling" with Petitioner and then went over the railing to the football field.  *Id*. She did not know if the victim jumped over the railing or fell, but she heard a shot, then three to five seconds later, she heard four or five more shots.  *Id*. at 117-120.  She did not witness the shooting as when she heard the first gunshot, she grabbed the children that she was there with and started heading away from the bleachers.  *Id*. at 121.  The substitute witness for the coroner testified that the autopsy report revealed that the victim had suffered eight separate gunshot wounds and the wound that killed him entered through his back and came out of his chest.  *Id.* at 153-155.

Based upon the testimony of the witnesses, the undersigned recommends that the Court find that Ohio appellate court's determination that the facts of the case did not reasonably support both an acquittal on the charge of murder and a conviction for voluntary manslaughter.  No witness testified and no other evidence was presented which sufficiently showed that the victim was the cause of provocation.  Further, even if sufficient provocation were established, Mr. Thomas' testimony supported a murder conviction and a finding that Petitioner had sufficient time to cool down as Mr. Thomas saw Petitioner shoot the victim, walk away, and then return to shoot him again.  Moreover, Petitioner was the only one that the witnesses saw with a gun and the victim's body had eight gunshot wounds.

For these reasons, the undersigned recommends that the Court find that Petitioner has not shown a fundamental miscarriage of justice warranting further review of his otherwise noncognizable ground for relief concerning a voluntary manslaughter conviction.  In addition, the undersigned recommends that the Court find that the Ohio appellate court's determination on this issue was not contrary to or an unreasonable application of law or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

-31-

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the

instant federal habeas corpus petition in its entirety with prejudice.


DATE:   December 16, 2014                      _/s/ George J. Limbert_____
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to
file objections within the specified time WAIVES the right to appeal the Magistrate Judge's
recommendation. L.R. 72.3(b).